UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 20-81450 |
| | ) | |
| David R. Faccone, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

In his chapter 7 bankruptcy schedules, Debtor David Faccone lists several individual retirement accounts in which he asserts claims of exemption under Illinois law.  Now at issue is the personal property exemption claimed pursuant to 735 ILCS 5/12-1001(f) as to the Debtor's rights in a financial contract with Jackson National Life Insurance Company.  Creditor Doris M. Geraci ("Creditor") and the chapter 7 trustee ("Trustee") object, arguing that the statute does not exempt the Debtor's interest.  The parties agree that the issue can be adjudicated on the facts to which they have stipulated.  After detailed review of the stipulations and the parties' joint submissions and consideration of the arguments presented, the court finds that the asset in question does not qualify for the exemption.

## PROCEDURAL BACKGROUND

On August 13, 2020, the Debtor filed his voluntary chapter 7 petition.  In the accompanying schedules he listed three accounts under the heading "Retirement or pension accounts," each described as an "IRA."  The Debtor asserted that each of these accounts is exempt under 735 ILCS 5/12-1006(f).  After the Creditor objected to the

exemptions, the Debtor amended his schedules to describe one account as an "IRA," one as a "Retirement Annuity," and the third as an "Inherited IRA." (ECF No. 28.) Although questions 23 and 31 of Schedule A ask for "Annuities" and "Interests in insurance policies," respectively, the Debtor did not list an interest in the Jackson National Life Insurance Company contract in response to either of those questions in his original or amended schedules.  Instead, he identified that asset only in response to the request for "Retirement or pension accounts" in question 21.  The Debtor's amended schedules do not claim an exemption for the "Inherited IRA" but still assert exemptions in the other two "Retirement accounts" under 735 ILCS 5/12-1006. (*Id.*) The Debtor marked "none" where the schedules and amended schedules ask about interests in annuities.[1]

After the Creditor and Trustee objected again, the Debtor filed an amended Schedule C which lists a 100% exemption under 735 ILCS 5/12-1006 for an "IRA: American Funds," and an exemption under 735 ILCS 5/12-1006 for an "Inherited IRA: Jackson National" valued at $155,595.30. (ECF No. 52.)  His amended Schedule C also claims an exemption under both 735 ILCS 5/12-1006 and 735 ILCS 5/12-1001(f) for a "Retirement Annuity: Jackson National" valued at $297,281.04.  The Creditor timely objected to the amended exemption claims, which the Trustee joined.

Several portions of the objections were later resolved.  With the parties' agreement the court sustained the objections to the exemption claim in the so-called "Inherited IRA with Jackson National." (Order, ECF No. 67.)  After representing

---

[1] His schedules disclose only a term life insurance policy with Banner Life for his interests in insurance policies.

several times on the record an agreement to withdraw the objections to the exemption claimed for the so-called "IRA: American Funds," the parties now stipulate "that the American Funds account is indeed an IRA and properly claimed exempt." (Stipulations ¶ 7, ECF No. 92.)   Finally, with the parties' agreement, the court sustained the objections to the exemption claimed for the so-called "Retirement Annuity with Jackson National" under 735 ILCS 5/12-1006. (Order, ECF No. 91.)  The parties jointly submit that only one issue remains, namely the objections to the exemption claimed under 735 ILCS 5/12-1001(f) for the "Retirement Annuity: Jackson National" valued at $297,281.04.[2]

After an opportunity for discovery and briefing, the parties submitted two sets of factual stipulations and jointly submit that this matter can be adjudicated "without further briefing, argument, or evidentiary hearing."[3]   In particular, the parties stipulate

> that the document attached to Docket # 93 as Exhibit A is the full and complete agreement between the Debtor and Jackson National Life Insurance Company regarding the account at issue, the "Retirement Annuity" with Jackson National, listed on Debtor's amended schedules filed 12/29/2020 as having a value of $297,281.04, and exempted under 735 ILCS 5/12-1001(f).

(Second Joint Stipulations ¶ 1, ECF No. 126.)  That document (Exhibit A to Docket No. 93) consists of: (1) a one-page "Policy Summary Sheet," (2) a letter dated October 23, 2018, from Jackson National Life Insurance Company to the Debtor, (3) a 34-page

---

[2] This decision will refer to that asset as the "Jackson Contract" and to the joined objections to the exemption asserted under 735 ILCS 5/12-1001(f) as the "Objection."

[3] A new chapter 7 trustee was appointed and the Debtor engaged new counsel during the litigation of this matter. (ECF Nos. 48, 84, 104.)

document entitled "Contract," (4) a three-page "Endorsement," (5) a one-page "Illinois Civil Union Endorsement," (6) a one-page "Reduced Administration Charge Endorsement," (7) an 11-page "Endorsement for Life Guaranteed Minimum Withdrawal Benefit with Bonus, Annual Step-Up and Earnings-Sensitive Withdrawal Amount," (8) a 12-page "Perspective II Individual Variable and Fixed Annuity Application," and (9) a three-page "Request for Transfer or Exchange of Assets." It also includes 14 additional pages of notices, disclosures, and placeholder pages. The parties stipulate that the foregoing set of documents constitute the "Jackson Contract."

In reaching this decision, the court also reviewed and considered the following documents from the court's docket: (1) Creditor's Objection to Debtor's Claim of Exemptions (ECF No. 54); (2) Trustee's Objection to Debtor's Claim of Exemptions (ECF No. 62); (3) Debtor's Response to Objections (ECF No. 72); (4) Creditor's Reply (ECF No. 73); (5) Trustee's Reply (ECF No. 75); (6) Joint Stipulation of Facts (ECF No. 92); (7) Creditor's Memorandum in Support (ECF No. 93); (8) Debtor's Memorandum in Opposition (ECF No. 99); and (9) Second Joint Stipulation of Facts (ECF No. 126.)

## <u>JURISDICTION</u>

The court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter involves the allowance or disallowance of exemptions from property of the estate and, therefore, is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2)(B).  Additionally, the parties, by stipulation, have consented to entry of final order or judgments by this court pursuant to *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015). (Stipulations ¶ 1.)

**FINDINGS OF FACT**[4]

The parties stipulate to the following material facts (Stipulations ¶¶ 2, 9, 11, 14-20):

1.  The Debtor filed his petition and schedules under chapter 7 on August 13, 2020.

2.  The Debtor filed his amended schedule A/B on October 27, 2020.  The assets listed include entry for "Retirement Annuity Jackson National $297,291.04."

3.  On December 29, 2020, the Debtor filed a second amended Schedule C claiming a 100% exemption in the Jackson Contract under 735 ILCS 5/12-1001(f).

4.  The Jackson Contract is an investment account.

5.  The Jackson Contract lists the Debtor's spouse as a "beneficiary."

6.  The Debtor's spouse is a dependent of the Debtor.

7.  The Jackson Contract is not a life insurance policy.

8.  The Jackson Contract was not funded by life insurance proceeds.

---

[4] The following findings, together with those set out in the "Discussion" below, set forth the court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

9. The Jackson Contract was not funded through monthly premium payments, but rather via a lump-sum transfer of $264,407.50 from a non-qualified annuity with Prudential on or around August 20, 2018.

10. The non-qualified annuity with Prudential had been funded via a lump-sum transfer of $174,000 from a non-qualified money market account with Woodbury Financial on or around November 21, 2011.

Based on its review of the Jackson Contract, (ECF No. 93, Ex. A), the court makes the following additional findings of fact regarding its terms:

1. The Debtor is listed as the sole "Owner" of the Jackson Contract and there is "No Joint Owner."[5]

2. The Debtor is listed as the only "Annuitant" with respect to the Jackson Contract.  There is "No Joint Annuitant."[6]

3. The Jackson Contract is designated as a "Non-Tax Qualified" plan.

4. The Debtor allocated investment in four designated mutual funds, allocating 25% of his total investment in each.

5. The Debtor's listed age is 61 as of the issue date of the Jackson Contract.

6. The Jackson Contract defines its "Income Date" to be August 20, 2052.

7. The Debtor has the right to contribute additional investments as premiums after the initial payment until the Income Date.[7]

---

[5] It is undisputed that the Debtor has not transferred ownership.

[6] While the contract gave the Debtor certain power to change the named "Annuitant," it is undisputed that he has not done so.

[7] The parties stipulate that the Debtor never made any such additional investment or contribution.

8.  At least until the "Income Date," the Debtor has the right to withdraw all or part of the then-current value of his investment at any time.

9.  The Debtor also had the option to choose from several different types or lengths of annuity distributions based on the value of the investment on the Income Date as an alternative to taking a lump sum distribution on that date.

10. Under the annuity option, the Debtor may "elect an income option at any time prior to the Income Date or change an income option up to seven days before the Income Date."

11. Annuity options include: (a) a life annuity, (b) a joint and survivor life annuity naming a designated second person as a joint life, (c) a life annuity with either 120 or 240 months guaranteed, or (d) a monthly term annuity of 5 to 30 years.

12.  Under the caption "Standard Death Benefit," the contract provides that the Debtor has the right to designate as "Beneficiary" an individual, rather than the Debtor's decedent estate, who will receive the then-current value of the investment at the time of the Debtor's death.

13. As Owner of the Jackson Contract, the Debtor had the right to change the named beneficiary by written request.

14. If the named beneficiary or beneficiaries are not alive as of the Debtor's death, the amounts payable on death are to be paid to the Debtor's decedent estate.

15. If the Debtor, as Owner, dies before the "Income Date," the then-current contract value of the remaining investment may be (a) paid in a single lump-sum payment, (b) paid within 5 years after the death, or (c) paid as an annuity over the lifetime of the Beneficiary or over a term not extending beyond the life expectancy of the Beneficiary.  If the Beneficiary is the Debtor's spouse, the spouse may in the alternative elect to continue the contract in her own name, at the current contract value and exercise all Owner's rights.

16. The Debtor, as Owner, has the right to pre-select the death benefit option election prior to the Income Date, and the Owner may change the election prior to that date.

17. If the Owner did not make a pre-selection before he dies, the Beneficiary may select the form of distribution option upon the Owner's death.

18. The parties do not allege that the Debtor has made such pre-selection.

19. If a valid selection is made to receive payments as an annuity rather than a lump-sum payment were the Debtor to die after the Income Date, any remaining amounts are to be paid to the Beneficiary at least as rapidly as under the method of distribution in effect.

20. The Debtor had selected a "Life Guaranteed Minimum Withdrawal Benefit" ("LGMW Benefit") in an endorsement to the contract.  The LGMW Benefit furnishes (for an additional periodic fee charged against the account) protection from investment loss or minimum growth of the investment by

providing an alternative non-investment-based calculation of the current value of the contract available for withdrawal.

21. The LGMW Benefit terminates upon the Income Date or upon the death of the Debtor, as Owner, unless continued by his spouse as Beneficiary.

## DISCUSSION

The Bankruptcy Code permits debtors to exempt certain property from the bankruptcy estate by relying upon state law exemptions based on their state of residence. 11 U.S.C. § 522(b).  It is undisputed that the Debtor may look to Illinois law for those bankruptcy exemptions.[8]  In connection with his interest in the Jackson Contract, Mr. Faccone claims the exemption provided under section 1001(f) of the Illinois personal property exemption statute which exempts:

> All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured, or to a revocable or irrevocable trust which names the wife or husband of the insured or which names a child, parent, or other person dependent upon the insured as the primary beneficiary of the trust, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not.

735 ILCS 5/12-1001(f).  The objecting party has the burden of proving that an exemption is not properly claimed. Fed. R. Bankr. P. 4003(c).

---

[8] Illinois is one of the states that has chosen to "opt-out" of the federal exemptions: "[i]n accordance with the provision of Section 522(b) of the Bankruptcy Code of 1978, (11 U.S.C. 522(b)), residents of this State shall be prohibited from using the federal exemptions provided in Section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d)), except as may otherwise be permitted under the laws of Illinois." 735 ILCS 5/12-1201.

The present dispute turns on the meaning of section 1001(f).  In such instances, the Bankruptcy Code defers to state law to ascertain the contours of the exemption. When "interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517 (7th Cir. 2021). "In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *Id.*  "[A]bsent any authority from the relevant state courts, the federal court shall examine the reasoning of courts in other jurisdictions addressing the same issue and applying their own law for whatever guidance about the probable direction of state law they may provide." *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018).  Under Illinois law, exemption statutes are generally "interpreted liberally in favor of the debtor." *Robinson v. Hagan*, 811 F.3d 267, 271 (7th Cir. 2016) (citing *In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985)).  However, courts must also "be mindful to avoid interpreting an exemption statute in a way not contemplated by the legislature in enacting a state's exemption scheme." *In re Sullivan*, 567 B.R. 348, 356 (Bankr. N.D. Ill. 2017) (quoting *In re Simpson*, 238 B.R. 776, 779 (Bankr. S.D. Ill. 1999)).

The phrasing of section 1001(f) is unusual and obtuse.  For example, while the section refers to "annuity contracts" payable to a wife or husband of the "insured," annuity contracts ordinarily do not provide for an "insured" person.  Rather, in general an "annuity contract differs materially from an ordinary life insurance

contract in that it is payable during the life of the annuitant rather than upon any future contingency" and, therefore, is "not ordinarily considered to be 'insurance.'" § 1:22. Annuities, 1 Couch on Insurance (3d. ed. 2021). *But see, e.g., SEC v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 69 (1959) (noting that "[s]ome States deny these 'annuity' contracts any status as 'insurance'" while "[o]thers accept them under their 'insurance' statutes").[9]

The Debtor concedes that the Jackson Contract "is not a life insurance policy." (Stipulations ¶¶ 14, 17.)  Instead, the Debtor argues that the Jackson Contract is an "annuity contract" and that section 1001(f) includes annuity contracts that are not part of or proceeds of a life insurance policy. (Response at 2, ECF No. 99.)  Further, the Debtor asserts that the reference to an "insured" for purposes of "annuity contracts" found in section 1001(f) should be read to mean the "annuitant." (*Id.* at 4-5.)  Finally, the Debtor contends, without reference to supporting authority, that the reference to "annuity contracts payable to a wife . . . of the insured" in section 1001(f)

---

[9] There are few published opinions interpreting the term "endowment policy" as used in section 1001(f). Those that have generally accept the definition from Black's Law: "[a] life-insurance policy payable at the end of a specified period, if the insured survives that period, or upon the insured's death if death occurs before the end of the period." *In re Bowen*, 458 B.R. 918, 921-22 (Bankr. C.D. Ill. 2011) (quoting Black's Law Dictionary 877 (9th ed. 2009)); *In re Lesak*, 2012 Bankr. LEXIS 1284, at *5 n.1 (Bankr. N.D. Ill. Mar. 26, 2012).  Under that definition, the Jackson Contract cannot constitute an "endowment policy," as the parties have stipulated that it is not a "life insurance policy."  The debtor in *Bowen* argued for an older definition from an earlier edition of Black's Law as a "policy which agrees to pay to the insured, if living at the expiration of a certain period, a specified amount of money, and in the event of his death in the interim, agrees to pay the face amount of the policy to his designated beneficiary." 458 B.R. at 921.  The court in *Bowen* seemingly rejected that definition, but ultimately found that the disability insurance policy at issue in the case would not qualify even under the debtor's proffered definition. *Id.* at 922.  Here, the Debtor has not suggested that the Jackson Contract is an endowment policy, and the court finds any such argument waived. But neither would the account qualify under the definition rejected in *Bowen*, as it has no "face amount" to be paid to a beneficiary on death, nor does it agree to pay a "specified amount of money" at the expiration of any certain period.

encompasses contracts "payable" to a named "beneficiary" upon the death of the annuitant. (*Id.* at 4.)

The parties have not offered a published decision that finds that section 1001(f) exempts agreements that are not essentially insurance contracts. *See, e.g., In re Lesak*, 2012 Bankr. LEXIS 1284, at *6 (Bankr. N.D. Ill. Mar. 26, 2012) ("The debtors have not cited, and the court has not found any decision applying this exemption to an annuity of any kind or to any contractual right that was not in essence life insurance."). Indeed, the caselaw indicates that it does not. For example, the Illinois appellate court has held, notwithstanding the instrument's payment-on-death provision, that a certificate of deposit "obviously is not a form of life insurance or annuity contract [and] does not qualify for the exemption set forth in section 12-1001(f)." *Fayette Cty. Hosp. v. Reavis*, 169 Ill. App. 3d 246, 249 (1988). More recently, the appellate court found that the exemption does not apply to an annuity purchased with the proceeds of life insurance. *People ex rel. Dir. of Corr. v. Ruckman*, 363 Ill. App. 3d 708, 711 (2005) ("Although section 12-1001(f) provides an exemption for life insurance proceeds, it does not apply where life insurance proceeds have been converted to another form of property-such as Ruckman did when he purchased the annuity.").

Particularly instructive are three decisions by Illinois bankruptcy courts holding that annuities purchased to fund a structured settlement payable to a bankruptcy debtor do not qualify for the section 1001(f) exemption even if the contract provides that the payments shall continue to be made to a surviving spouse. *See In*

*re Simon*, 170 B.R. 999 (Bankr. S.D. Ill. 1994); *In re Griffin*, 2009 Bankr. LEXIS 4620, 2009 WL 4349001 (Bankr. S.D. Ill. Nov. 23, 2009); *Lesak*, 2012 Bankr. LEXIS 1284.[10] Taking note that the first clause of section 1001(f) refers to "proceeds payable because of the death of the insured," these decisions hold that section 1001(f) does not apply to annuities payable in connection with the settlement of a tort claim rather than upon the death of an insured. *See, e.g.*, *Griffin*, 2009 Bankr. LEXIS 4620, at *9 (concluding that "the periodic payments are not proceeds payable by reason of death"). The court in *Simon* also noted that there was no evidence that the annuity at issue had a cash surrender value or belonged either to the debtor or his wife. 170 B.R. at 1003.

Observing that the second clause of section 1001(f) refers to "the insured," the court in *Lesak* found that the statute's "first phrase cover[ing] the actual benefits paid upon the death of an insured" must be read in connection with its "second phrase cover[ing] the cash value of various types of contracts under which a life can be insured, *e.g.*, life insurance contracts, endowment policies, and annuity contracts." 2012 Bankr. LEXIS 1284, at *5. From this, the decision concluded, "to be exempt under section 1001(f), the annuity contract payable to the wife or husband of the insured must be payable upon the death of the insured." *Id.* Under the reasoning of *Lesak*, the exemption in section 1001(f) applies "only to protect death benefits and

---

[10] In another bankruptcy case, *In re Rigdon*, the court considered whether an annuity funding a structured settlement is exempt under section 1001(f). 133 B.R. 460 (Bankr. S.D. Ill. 1991). However, *Rigdon* only considered the issue of whether the debtor beneficiaries were "dependent upon" their deceased son, the annuitant, as required by section 1001(f), and did not address the issue of whether the annuity must arise out of or constitute proceeds of a life insurance policy. Furthermore, the opinion in *Rigdon* was not a final adjudication of the matter. 133 B.R. at 467.

the cash value of life insurance products." *Id.* Applying that standard here, the cash value of the Jackson Contract does not qualify for the section 1001(f) exemption as the parties stipulate that the account "is not a life insurance policy," but rather "is an investment account." (Stipulations ¶¶ 14, 17.)

The Debtor attempts to distinguish *Lesak* from the instant case because the Jackson Contract contains what is styled a "death benefit." The court is not persuaded. To be sure, the Jackson Contract provides that upon the Debtor's death the Debtor's spouse as the named "beneficiary" has a right to payment or withdrawal of the investment value. But that also was the case in *Lesak* and *Griffin*. As the court in *Lesak* found: a spouse's "right to payment if her husband dies first does not transform the annuity into a life insurance policy that falls within the scope of section 1001(f)." 2012 Bankr. LEXIS 1284, at *7. Any potential benefit of the spouse as a designated "beneficiary" is "merely incidental to the fundamental purpose of the annuity." *Id.*; *see also, e.g., In re Bowen*, 458 B.R. 918, 922 (Bankr. C.D. Ill. 2011) ("To whatever extent there is some life insurance component to the policies, it is merely incidental to the disability insurance and, therefore, does not determine whether the cash value of the policy can be claimed exempt under § 12-1001(f)."). Here, too, the terms of the Jackson Contract and the parties' stipulations do not reveal the so-called "death benefit" provision to be anything other than incidental to the fundamental purpose of the Jackson Contract at the time Mr. Faccone filed his petition.

There are additional reasons the Debtor's interest in the Jackson Contract does not qualify for the section 1001(f) exemption. First, the court questions whether the

contract at issue even constitutes an "annuity contract" for purposes of the statute. No published case has explicitly defined the term "annuity" for purposes of section 1001(f). In other contexts, the Illinois Supreme Court has defined an annuity to be "a contract in which a person pays a bank or an insurance company a lump sum in return for fixed periodic payments," noting that if "the person dies during the term of the annuity, the remainder is typically converted into a lump sum and paid to a designated beneficiary." *Gillmore v. Ill. Dep't of Human Servs.*, 218 Ill. 2d 302, 307 (2006) (citing Black's Law Dictionary 99 (8th ed. 2004)).[11]

The Jackson Contract does not square with this definition. It generally provides for neither fixed nor periodic payments. Instead, it resembles much more closely an ordinary investment asset owned by the Debtor. The Debtor made a single investment, with the right, but no obligation, to make additional contributions if he so desires. He has options to direct how that investment is invested – either in index-based funds or in fixed interest opportunities, or in some combination of the two. The Jackson Contract also does not provide for a fixed schedule of payments, but rather gives the Debtor the right to take partial or complete withdrawals of his investment at any time for the contract's value at the time. There is the possibility the Debtor will incur an early withdrawal fee if he so elects, but that fee is relatively insignificant and decreases each year for the first seven years, after which he will not be charged.

---

[11] *Gillmore* involved an appeal of an administrative decision finding a Medicare applicant's purchase of a "balloon" annuity to be an improper transfer under state regulations. Older definitions by the Illinois Supreme Court are even more limited. For example, in *Routt v. Newman*, the court described annuities as follows: "An annuity, technically, is a certain yearly sum granted to a person in fee or for life or for years, chargeable only on the person of the grantor. It is used in a broader sense to designate a fixed sum payable periodically, subject to such limitations as the grantor may impose, and it may be charged on real estate as well as on the person." 253 Ill. 185, 188 (1911).

Not surprisingly, the parties stipulate that the Jackson Contract is "an investment account." (Stipulations ¶ 14.)

To be sure, the Debtor may take his mandatory withdrawal in the form of one of several annuity options if by the "Income Date" — 34 years after the beginning of the contract — he has not withdrawn his investment. But the Jackson Contract also gives the Debtor the option to simply withdraw the full investment value in a single lump-sum at that time. In either case, that provision concerns the withdrawal and termination of the investment. As such, the mere inclusion of an option to take the wind-up distribution as an annuity or a lump-sum does not transform the investment interest the Debtor held on the petition date into an "annuity" for purposes of section 1001(f).

Nevertheless, the court need not determine the exact contours and scope of section 1001(f)'s term "annuity contract" because the Jackson Contract on its face is not an annuity contract "*payable to* a wife or husband of the insured." 735 ILCS 5/12-1001(f) (emphasis added). As explained by the court in *In re Bateman*, section 1001(f):

> exempts property "owned by the debtor" in two cases: first, dealing with insurance "proceeds payable [to a "debtor"] because of death of the insured", and second, where cash value in a debtor's own policy of insurance, or endowment, or annuity contract is owned by the debtor, but is payable to a family member "or other person dependent upon the insured" and creditors seek to attach that cash value before or after death of the insured.

157 B.R. 635, 638 (Bankr. N.D. Ill. 1993) (alteration in original). Under the Jackson Contract, the Debtor has the right to withdraw the entire amount of the investment

at any time, and this right is not limited to a mere discounted cash surrender value payable to the Debtor's spouse or other dependent.

Even if the Debtor waits until the "Income Date," 34 years after the making of this contract, to withdraw the investment and even if he then elects to take the mandatory withdrawal in the form of an annuity rather than a lump-sum, such annuity will still be payable to the Debtor, not to his spouse or dependent under the terms of the contract. While the so-called "death benefit" provision permits the Debtor to select a "beneficiary" in the future, the court agrees with *Lesak* that such provision is incidental and does not transform the contract or the Debtor's interest in this asset into one "payable to" the spouse or dependent. Similarly, the contractual provision that a "beneficiary" may take distribution of the remaining investment in the form of either an annuity or a lump sum on the Debtor's death, without more, does not transmute the Jackson Contract as of the petition date into an annuity payable to the Debtor's spouse or dependent.

In this respect, the term "beneficiary" is generally used in a different sense for insurance and endowment policies than for annuities or other investments. To be sure,

> Annuities are sometimes generally categorized as a type of life insurance, but annuities serve different purposes than life insurance. Robert H. Jerry, II, 1-1 *New Appleman on Insurance, Law Library Edition* § 1.08[2][b][vi] (2011). A person normally purchases a life insurance policy to provide security for his or her family members in the event of a premature death. On the other hand, a person typically purchases an annuity to avoid the risk associated with living an unexpectedly long life and running short of financial resources.

*In re May*, 478 B.R. 431, 434 (Bankr. D. Colo. 2012). In contrast to an insurance or

endowment policy purchased for benefits to be paid to the beneficiary, the expectation for an annuity contract payable to a primary payee but permitting the designation of a "beneficiary" is that the contract will be paid to the primary payee not the beneficiary. As such, the section 1001(f) claim in this case is analogous to the claim rejected in *Reavis* where the court found that the expectation for a certificate of deposit was that the holder is entitled to the funds and the existence of a payable-on-death clause does not transform it into a life insurance policy.[12] *Reavis*, 169 Ill. App. 3d at 249. Accordingly, even if the Jackson Contract could be seen to be an "annuity", it is not one "payable to" the Debtor's spouse or other dependent. Therefore, it cannot qualify for exemption under section 1001(f).

## CONCLUSION

Because the Jackson Contract is not a life insurance policy, does not constitute proceeds of a life insurance policy and is not an annuity contract payable to a spouse, child, parent, or other person dependent upon the Debtor, as stipulated by the parties, the Creditor's and Trustee's objections to the Debtor's claim of exemption in the Jackson Contract under 735 ILCS 5/12-1001(f) will be sustained for the reasons set forth above. Accordingly, the claim of exemption in the Jackson Contract will be disallowed.

---

[12] *See also, e.g., In re Ellis*, 274 B.R. 782, 787 (Bankr. S.D. Ill. 2002). In *Ellis*, the court held that a whole life insurance policy did not qualify as an "annuity" for purposes of the "retirement plan" exemption in 735 ILCS 5/12-1006(a). The court determined that even though the contract gave an option to take payment in the form of an annuity if the debtor reached age 65, at "the time the debtor filed her petition, the policy at issue had the characteristics, not of an annuity policy paying out a fixed amount to the debtor over time, but of an insurance policy entitling the debtor's beneficiary to an immediate payment in the event of the debtor's death." *Id.* Thus, the court found the policy did not constitute an "annuity" for purposes of section 1006. *Id.* at 788.

A separate order will be entered giving effect to the determinations reached herein.

DATE: February 7, 2022

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge